**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-22158-CIV-MORENO/TORRES

HC WATERFORD PROPERTIES, LLC,

    Plaintiff,

vs.

MT. HAWLEY INSURANCE COMPANY,
CRC INSURANCE SERVICES, and,
GFI INSURANCE SERVICES, INC.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary [D.E. 75] and Defendant Mt. Hawley's Cross-motion for Summary Judgment [D.E. 77]. The Court has reviewed the motions, the responses, and the record in the case. For the following reasons, Plaintiff's motion should be denied and Defendant's motion should be granted.

### I. BACKGROUND

#### A. *The Parties and the Basis for this Lawsuit*

The following facts are uncontested. Plaintiff HC Waterford Properties, LLC ("Waterford") is a Florida based real estate company. On July 29, 2004, Defendant Mt. Hawley Insurance Company ("Mt. Hawley") issued a commercial general liability policy to Waterford on certain residential property owned by Plaintiff known as ITOPIA Private Residences ("ITOPIA") located at 10263 Gandy Blvd., St. Petersburg,

Florida ("the 2004 policy"). [D.E. 98-8]. The policy was renewed the following year ("the 2005 policy"). [D.E. 75-3].

At the inception of the 2004 policy, ITOPIA was primarily a rental property. The following year, however, sometime in August 2005, Waterford converted ITOPIA into a condominium and started selling its units to interested buyers. *See* Amended Complaint ¶ 13 [D.E. 14]. As a part of the conversion project, Waterford replaced certain appliances in selected units. *Id.* ¶ 15.

On or about August 21, 2005, a leak occurred in one of ITOPIA's units causing damage to its neighboring unit owned by one Emily Cox ("Cox"). As a result, on December 21, 2005, Cox filed a lawsuit against Waterford in the Sixth Circuit Court in Pinellas County, Florida.[1] [D.E. 76-2]. The complaint asserted a "negligence" and a "failure to disclose" claims against Waterford and sought damages allegedly caused by the leak. According to the allegations in the underlying lawsuit, the leak was caused by faulty dishwasher hose connection.

Subsequently, Waterford sought coverage from Mt. Hawley to defend against the Cox lawsuit. On February 3, 2006, however, Mt. Hawley denied coverage and refused to defend Waterford contending that the installation of dishwashers constituted "construction work related to the conversion of apartments to condominiums," which under the terms of the policy, was excluded from coverage. [D.E. 75-2].

---

[1] The underlying lawsuit was captioned *Emily Cox v. HC Waterford Properties, LLC, and Jan Ficklin*, Case No. 05-8487 ("underlying lawsuit" or "Cox lawsuit").

On April 16, 2008, a jury in the underlying lawsuit returned a verdict against Waterford and a final judgment was entered against it in the sum of $118,280.70. [76-3].

Following the entry of the final judgment in the Cox lawsuit, Waterford brought this action against Mt. Hawley alleging breach of contract. According to the allegations of the Amended Complaint, Mt. Hawley breached its insurance contract with Waterford when it refused to provide coverage for the loss and/or defend Waterford in the underlying lawsuit.

### B. *The Policy*

Both the 2004 and the renewed 2005 policy contained identical endorsements and exclusion provisions. Namely it contained the following two exclusions:

EXCLUSION - PRODUCTS-COMPLETED OPERATIONS HAZARD
(CONVERTED BUILDINGS)

. . .

This insurance does not apply to "property damage" included within the "products-completed operations hazard" for buildings if they have been converted into condominiums or co-operatives at any time prior to, during or after the policy period.

BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," "personal injury," or "advertising injury" arising directly or indirectly out of the following:

    a. breach of express or implied contract;

    b. breach of express or implied warranty;

    c. fraud or misrepresentation regarding the formation, terms or performance of a contract; or

        d.  libel, slander or defamation arising out of or within the contractual relationship.

## *II. ANALYSIS*

The main issue before the Court is whether the allegations listed in the Cox lawsuit obligated Mt. Hawley to defend that lawsuit. Therefore, if we find that one of the exclusions contained in the general liability insurance in question excused Mt. Hawley from that duty, a summary judgment should be entered in its favor. If, however, we find the exclusions to be invalid or inapplicable to the allegations raised in the underlying lawsuit, a summary judgment should be entered in favor of Waterford.

### A.    *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.     *Florida Insurance Law Standards*

Because this case is before the Court under its diversity jurisdiction, and without dispute from the parties, Florida law governs the interpretation of the applicable insurance policies.

In Florida, it is well established that an insurer's duty to defend "must be measured by the allegations of the complaint." *Barry Univ., Inc. v. Fireman's Fund Ins. Co.*, 845 So. 2d 276, 278 (Fla. 3d DCA 2003) (internal citation omitted). Therefore, "[i]f the complaint, fairly read, alleges facts which create potential coverage under the policy, [then] the insurer must defend the lawsuit." *Id.* "When in doubt, the Court must err on the side of enforcing the insurer's duty to defend." *Sigma Tech Sales, Inc. v. Travelers Indemnity Co.*, No. 08-60772-CIV, 2009 WL 413514, at *3 (S.D. Fla. Feb. 19, 2009) (citing *Jones v. Florida Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. 2005)). However, the use of "[c]onclusory 'buzz' words unsupported by factual allegations are not sufficient to trigger coverage." *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000)). Furthermore, if the allegations in the complaint show the applicability of a policy exclusion there is no obligation to defend. *See Acceptance Ins. Co. v. Bates, Dunning & Assocs. Inc.*, 858 So. 2d 1068, 1069 (Fla. 3d DCA 2003).

"Under Florida law, an insurance policy should be construed in its entirety and given the construction which reflects the intent of the parties." *Gulf Tampa Drydock v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) (citing *Landress Auto Wrecking Co. v. United States Fid. & Guar. Co.*, 696 F.2d 1290, 1291 (11th Cir. 1983) (applying Florida law)). *See also Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So. 2d 739, 741 (Fla. 5th DCA 2003) (policy language is to be interpreted according to its "everyday meaning" as it is "understandable to a layperson.").

"[A]mbiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations, one resulting in coverage and one resulting in exclusion." *Gulf Tampa Drydock*, 757 F.2d at 1174-75 (citing *Blue Shield of Florida, Inc. v. Woodlief*, 359 So. 2d 883, 884 (Fla. 1st DCA 1984)). Absent ambiguity in the policy language, however, rules of construction are unnecessary and courts will apply the plain language of the policy. *Nat'l Indem. Co. v. Corbo*, 248 So. 2d 238, 241 (Fla. 3d DCA 1971); *Riveroll v. Winterthur Int'l Ltd.*, 787 So. 2d 891, 892 (Fla. 3d DCA 2001) (same).

Whereas exclusionary clauses are generally considered to be contrary to the protective purpose of insurance, they are construed narrowly against the insurer. *Hrynkiw*, 844 So. 2d at 741. "To properly interpret an exclusion, the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person." *Union Am. Ins. Co. v. Maynard*, 752 So. 2d 1266, 1268 (Fla. 4th DCA 2000) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1074-75 (Fla. 1998)).

### C. *Condominium Conversion Exclusion*

It is undisputed that Waterford converted ITOPIA from primarily rental property to a condominium. It is also undisputed that Cox, a former renter, purchased one of the ITOPIA's converted units from Waterford with a closing date of August 13, 2005. The Cox complaint alleged that the leak that caused the damage to the unit occurred on August 21, 2005. Therefore, it is clear that the allegations pertained to an ITOPIA unit that was located in a building that was converted from a rental property to a condominium.

The language of the exclusion in question plainly states that the policy "does not apply to "'property damage' included within the 'products-completed operations hazard' for buildings if they have been converted into condominiums at any time prior to, during or after the policy period." *See* The 2005 Policy [D.E. 75-3 at 38]. The term "products-completed operations hazard" is defined as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" In other words, the exclusion provides no coverage for property damage in buildings converted into condominiums, without qualification and limitation, and regardless of the particular theory of liability against the insured.

We find nothing ambiguous in the language of the exclusion or the entire 2005 policy as a whole. Indeed, the Schedule of Endorsements that is located on the second page of the policy expressly lists "Products Completed Operations Hazard (Converted Buildings) and warns the reader of its existence. Furthermore, another warning is included right above the exclusion in question stating in bald letters: "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY."

Waterford contends that the "Converted Buildings" exclusion did not allow Mt. Hawley to exclude coverage because the insurance application upon which the 2005 policy was issued unequivocally and clearly states that the policy is being sought for the insured's condominium conversion project. We, however, find Plaintiff's position without merit.

Waterford is correct that Florida statutes expressly state that "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1). Nonetheless, the general rule in Florida is that when the provisions of the application and those of the policy irreconcilably conflict, the policy provision will usually govern. *Joseph Uram Jewelers, inc. v. Liberty Mut. Fire Ins. Co.*, 273 So. 2d 111, 113 (Fla. 3d DCA 1972). However, that rule is qualified in cases where reliance on the provisions of the application would result in greater indemnity. *Id.*

Plaintiff cites to the October 29, 2004 Habitational/Lessors Risk Supplemental Application [D.E. 98-4] in support of its contention that the insurance application "unequivocally and clearly states that the policy is being sought for the insured's condominium conversion project." A careful review of the document, however, does not support Plaintiff's position.

First, as the name suggests, the Habitational/Lessors Risk Supplemental Application is not technically the application for the 2005 policy. Instead, it was submitted by Waterford to Mt. Hawley as a supplement to the 2004 policy. Second, nowhere in the three page document, does it "unequivocally" and "clearly" state that

the new policy is sought for the condominium conversion project. Thus, at most, Plaintiff's only argument may be that the Habitational/Lessors Risk Supplemental Application somehow modified the July policy.[2] However, the only reference to the condominium conversion project is arguably made by Waterford in its answer to question number six that states:

> 6. Do you perform background checks on prospective tenants? If "YES," please detail below, describing your process.
>
> Answer: Standard condo - being converted to condo.

*See* Habitational/Lessors Risk Supplemental Application at 1 [D.E. 98-4]. Clearly, the indisputable intent behind question six is to inform the insurer about the actual individual tenants who will occupy the insured's premises. In no way does the question seek to inquire about the insurer's construction development plan for its property.

The term "conversion" is also handwritten as a response to the two following questions:

> 8. Do you have a resident manager at each location?
>
> Answer: N/A - conversion
>
> 10. If this is a condominium: What percent of the units are occupied exclusively by the owners and their immediate family?
>
> Answer: 100% - conversion

---

[2] The 2004 policy contained identical "Converted Buildings" exclusion as its renewed 2005 version.

*See id.* at 2. Once again, the information provided in the responses to these questions only serves to inform the insurer about the potential occupants of the property. In no way does it conflict with the 2004 policy's express "Converted Buildings" exclusion.

Finally, the April 20, 2005 Commercial Insurance Application [D.E. 112-5] associated with the 2005 policy does not mention any conversion projects. In other words, contrary to Plaintiff's assertion, there is nothing in the application that would invite reliance for greater indemnity than those listed in the policy. *See, e.g., Liberty Mut. Fire Ins. Co.*, 273 So. 2d at 113.

Waterford's reliance on *Mathew v. Ranger Ins. Co.*, 281 So. 2d 345 (Fla. 1973) is misplaced. There, the application and some portions of the policy itself indicated that coverage was to extend to student pilots. Another section of the policy, however, excluded such coverage. *Id.* at 349 ("In granting weight to the provisions of the application, we are cognizant of the general rule allowing the provisions of the policy to govern where conflict exists between the provisions of the application and the policy. . . . However, that general rule is qualified where reliance on the provisions of the application would result in greater indemnity.") The factual situation in *Mathew* is clearly distinguishable from the present case. Nothing in the policy and the application implies indemnity for the buildings that were converted into condominiums.

Likewise, Waterford's contention that the exclusion does not apply because the "property damage" at issue in the underlying lawsuit did not occur "away from premises" owned by Waterford is also without merit. The "products-completed operations hazard" exclusion operates to bar coverage for property damage or bodily

injury arising from a service, such as construction or installation, that the insured has completed away from its own premises. *See, e.g., In re Reinforced Earth, Co.*, 925 F. Supp. 913, 917-18 (D.P.R. 1996). Therefore, the plain construction of that term leads the Court to conclude that the purpose of the Converted Buildings exclusion was to exclude from coverage units that were converted to condominiums and sold to third parties. The fact that Waterford might have ownership interest in other unsold units or the condominium's common areas has no bearing on this exclusion.

Therefore, we agree with Mt. Hawley that the "Converted Buildings" exclusion relieved it from its duty to defend Waterford in the underlying lawsuit.

### D.    *Breach of Contract Exclusion*

Even assuming, *arguendo*, that the Habitational/Lessors Risk Supplemental Application to the 2004 policy voided the "Converted Buildings" exclusion, which it did not, the exclusion in the 2005 policy for "property damage" arising directly or indirectly from breach of contract also precludes coverage.

The "failure to disclose" count of the Cox complaint alleged that Waterford "had an affirmative obligation to disclose the systemic dishwasher water hose connection problem to [Cox] prior to purchase of the Unit." *See* The Cox Complaint ¶ 16 [D.E. 76-2]. Furthermore, the "negligence" count alleged that Waterford "as the developer of the Condo Units" . . . "had a duty to [Cox] to use due care in the Condo conversion/renovation process, including selection and installation of the dishwashers in the Condo Units, . . ." *Id.* ¶ 11.

In *Johnson v. Davis*, The Florida Supreme Court retreated from the ancient doctrine of *caveat emptor* and held that "where the seller of a home knows of facts

-11-

materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer." 480 So. 2d 625, 629 (Fla. 1985). Thus, the *Johnson* holding clearly requires some indicia of privity or a fiduciary, contractual, or other special relationship between the seller and the buyer before the duty to disclose can be imposed on the seller. *See, e.g., Kovach v. McLennan*, 564 So. 2d 274, 277 (Fla. 5th DCA 1990) ("Because of the absence of privity between them as buyer and seller, the rule pronounced in *Johnson* . . . does not apply."). It is clear, therefore, that the "failure to disclose" count must arise out of the condominium sales contract between Waterford and Cox.

At first glance, the "negligence" count might appear to be a claim independent of the sales contract. A closer inquiry, however, begs a different conclusion. The exclusion at issue applies to "property damage . . . arising directly or indirectly out of . . . breach of express or implied contract." The phrase, "arising out of" is not ambiguous and should be interpreted broadly. *James River Ins. Co. v. Ground Down Eng'g., Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008). "'[A]rising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having connection with'" *Id.* (quoting *Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 539 (Fla. 2005)). "To have arisen out of something, there must be 'some causal connection, or relationship' that is 'more than a mere coincidence' but proximate cause is not required." *Id.*

Also, no matter how the basis of the claim may have been creatively characterized by the plaintiff, we must look beyond the artfulness of the pleadings to decide whether a preclusion applies. *See, e.g., Cabezas v. Fla. Farm Bureau Cas. Ins.*

*Co.*, 830 So. 2d 156, 157 (Fla. 3d DCA 2002) (concluding that where the alleged facts establish intentional conduct, but the claim alleges negligence, the negligence label should be disregarded); *see also State Farm Fire & Case. Co. v. Tippett*, 864 So. 2d 31, 35-36 (Fla. 4th DCA 2003) ("wording alone in a pleading does not create a duty to defend, regardless of its artfulness . . . coverage issue should turn on the merits-on whatever a policy exclusion applies and not on creative pleading"); *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) ("creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint").

Here, according to the factual allegations in Cox's complaint, Waterford's duty of care stemmed from the fact that it was the developer of the condominium and because it sold the unit to Cox. In other words, if the sales contract between the parties did not exist, Waterford would owe no duty to Cox. Therefore, given the broad meaning of the term "arising out of" and the facts alleged in the Cox complaint, the negligence claim clearly arises out of the breach of sales contract between Waterford and Cox, thus the "Breach of Contract" exclusion also relieved Mt. Hawley from its duty to defend Waterford in the underlying lawsuit.

### III.  CONCLUSION

Based upon a thorough review of the record as a whole and the arguments presented by the parties in their motions, it is hereby **RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment should be **DENIED**.

2. Defendant's Motion for Summary Judgment should be **GRANTED** and a summary judgment should be entered in favor of Defendant Mt. Hawley Insurance Company on Count I of the Amended Complaint.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida this 21st day of August, 2009.

                                 */s/ Edwin G. Torres*
                                 EDWIN G. TORRES
                                 United States Magistrate Judge